**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

OPEN ACCESS FOR ALL, INC.,
and ANDRES GOMEZ,

      Plaintiffs,

vs.

CONWAY TOURS, INC.
d/b/a Big Bus Tours Miami,

      Defendant

---

## COMPLAINT

---

COMES NOW Plaintiff Open Access For All, Inc. and Plaintiff Andres Gomez, by and through their undersigned counsel hereby file this Complaint and sue Defendant Conway Tours, Inc. ("Defendant") for injunctive relief, attorney's fees and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

1. Plaintiff Open Access for All, Inc. and Plaintiff Andres Gomez bring this action in Federal Court to stop the exclusion of blind, vision impaired, and low vision patrons of Defendant's business.

2. Businesses have choices when they offer their services to the public.

3. Businesses should not operate in any manner that creates discrimination in access to their products and services.

1

4.      This complaint seeks declaratory and injunctive relief to have Defendant update its policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business so that Plaintiff (who is legally blind) can communicate with Defendant effectively and timely such that his access to Defendant's physical locations is not impeded; as such impediment has rendered Defendant's physical business locations not fully accessible to the visually impaired.

## JURISDICTION & VENUE

5.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

6.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, the Defendant's business location is located in the district. In addition, the Defendant is authorized to conduct business within the state of Florida as a Florida for-profit corporation.

7.      Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

### Open Access For All, Inc.

8.      Plaintiff Open Access For All, Inc. (also referenced as "Plaintiff Open

Access", "Open Access," or jointly with Plaintiff Andres Gomez as "Plaintiffs") is a membership civil rights non-profit corporation formed under the laws of the State of Florida which maintains its principal office within this district.

9.      Open Access members include individuals who are substantially limited in the major life activities of seeing/sight.

10.     Open Access advocates, *inter alia*, for the full and equal participation of its members in all aspects of society.   Open Access is devoted to the goal of full inclusion, equality, and civil rights for its members, who are blind or visually impaired and whose lives are directly affected by loss of sight. Open Access' work is based on a close association with its members.

11.     Open Access members include individuals who are substantially limited in the major life activity of sight. Open Access members utilize screen reader software, which when utilized allows individuals who are visually impaired to communicate with internet websites.

12.     One or more of Open Access members have tried and have been unable to access and comprehend the Defendant's Website and have standing to bring suit in their own right to sue Defendant.   One or more of Open Access members have been discriminated against as they have been deterred from (and have been denied the opportunity to) participate and benefit from the goods, services, privileges, advantages, facilities and accommodations at Defendant's property equal to that afforded to other individuals. One or more of Open Access members have a well-grounded belief that any attempt to visit Defendant's property free of discrimination would be a futile gesture.

13.     Open Access members have a realistic, credible, existing and continuing

threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations contained within this Complaint. Open Access members have reasonable grounds to believe that they will continue to be subjected to discrimination in violation of the ADA by the Defendant.

14.    Accordingly, the interests that Plaintiff Open Access seeks to protect through this litigation are germane to its mission and purpose.

**Andres Gomez**

15.    Plaintiff Andres Gomez (also referenced as "Plaintiff Gomez" or jointly with Plaintiff Open Access as "Plaintiffs") is a resident of the State of Florida, and he resides within this judicial district.

16.    Plaintiff Gomez is substantially limited in the major life activity of sight/seeing and is an Open Access member.

17.    Plaintiff Gomez is an otherwise qualified or qualified individual with a disability in that he is qualified to access Defendant's Website.

**Conway Tours, Inc.**

18.    Defendant Conway Tours, Inc. is the operator of a chain of tour buses under the brand name "Big Bus Tours Miami." The Defendant is the largest operator of open-top sightseeing tours in the world, providing sightseeing tours in 20 cities across three continents.

## FACTS

19.    Defendant operates guided bus tours of historic and vacation areas consisting of Downtown, Little Havana, MacArthur Causeway, South Beach, Art Deco

District, Wynwood and Design District, Venetian Pool, Coconut Grove, Coral Gables, Freedom Tower, Ocean Drive, and Vizcaya Museum and Gardens, under the brand name "Big Bus Tours Miami." Big Bus Tours Miami tours offer to the public an entertaining and educational experience which is heretofore referenced as "goods and services."

20.     Since Defendant is a private entity which operates Big Bus Tours Miami tours, Defendant is defined as a "Public Accommodation" within meaning 42 U.S.C. §12181(7)(I) and 28 C.F.R. §36.104(9).

21.     Each of Defendant's tours are open to the public and each is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation as "[A] park, zoo, amusement park, or other place of recreation," 42 U.S.C. §12181(7)(I), §12182, and 28 C.F.R. 28 C.F.R. §36.104(9) and are referenced throughout as "Place(s) of Public Accommodation," "bus tour(s)," or "tours."

22.     Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.bigbustours.com ("Website").

23.     Defendant's Website is offered by Defendant as a way for the public to reserve and purchase tickets to the Big Bus Tours Miami tours online.

24.     The Website is an integral part of the goods and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(I) of the ADA[1].

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by

25.     Within Defendant's Website the public can access provided electronic documents on demand. Defendant offers the public access to its electronic documents online though Portable Document Format, which is commonly referred to as "electronic documents" or PDFs."

26.     The electronic documents offered in Defendant's Website were not coded for accessible to screen reader software or provided in an HTLM format.

27.     Plaintiff Gomez enjoys the bayside and shopping at Bayside Marketplace. In February of 2019, while in the area, Plaintiff Gomez encountered Big Bus Tours Miami bus tours located at Bayside Marketplace (approximately at 301 North Biscayne Boulevard, Miami, Florida 33132).  Plaintiff Gomez and his family became excited at the prospect of taking a Miami bus tour.

28.     Because Plaintiff Gomez and Open Access members are legally blind, before they embark on any venture, they study the business where they are seeking to patronize through using the internet.  In the case of Plaintiff Gomez's investigation of Big Bus Tours Miami bus tours, in February, 2019, Plaintiff went to Defendant's Website to learn (1) the exact area to catch the Big Bus tour;  (2) the cost of Big Bus Tours Miami tour packages for adult and children; (3) the different routes Big Bus Tours Miami has available; and (4) times and dates of operations so he can arrange an outing with his family

29.     Defendant's Website was inaccessible so Plaintiff Gomez and Open Access members could not (among other things):

---

law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice   - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

     a.  find out the dates and times for bus tours;

     b.  find out about pre-booking tours;

     c.  learn about the type of routes available for the various tours.

30.   The failure to obtain the information needed precluded Plaintiffs' ability to patronize Big Bus Tours Miami because, as blind individuals, Plaintiffs need to plan outings in detail in order to have the proper financing for a venture, and insure that they arrive at a given location for the desired activity (eating, drinking, shopping, or recreating).

31.    In this Smartphone era (the age of information technology), Defendant's provision of a Website is an essential part of the services offered, and is no different than the customer service which Defendant provides to the public as part of its product and service offering.

32.    Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[2]. Furthermore, Defendant's Website does not have the indication of website accessibility[3].

33.   Plaintiff Gomez and Open Access members have tried and been unable to access and comprehend Defendant's Website and the electronic documents located therein. By denying Plaintiffs the opportunity to comprehend its Website and the electronic documents therein due to Plaintiffs' disability (visual impairment), Defendant

---

[2] "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design."  Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

[3] 

has denied Plaintiffs the opportunity to use the internet to plan a bus tour as accommodations are made available to the sighted public.

34.     Plaintiff Gomez and Open Access member's inability to communicate with Defendant's business created a *virtual barrier* which resulted in an *effective barrier* to access to Defendant's bus tour packages has hindered, impeded and inhibited Plaintiff Gomez and Open Access member's access to Defendant's physical bus tours.

35.     Plaintiff Gomez's expectation of planning an outing with his family to be entertained has been vanquished since he could not access Defendant's Website at all to avail himself of the latest services which Defendant offers to the public.

36.     While Defendant addresses individuals with disabilities on its Website[4], and provides information on how its physical Place(s) of Public Accommodation accommodate individuals with disabilities, the fact is that its Website is inaccessible to blind individuals.   Therefore, despite Defendant's notice of accessibility within its Website, Defendant's Website is not accessible to the visually impaired.

37.    The fact that Plaintiff Gomez could not access the Defendant's Website and could not comprehend the electronic documents contained therein left him excluded from accessing Big Bus Tours Miami tours and further left him with the feeling of segregation, rejection, isolation, due to the fact that he was (and remains) unable to participate in his own business affairs (such as in this case selecting, reserving, and purchasing a tour) in a manner equal to that afforded to others who are not similarly disabled. Defendant caused the injury when it failed to comply with the ADA.

---

[4] https://www.bigbustours.com/en/miami/help/

38.     Plaintiff Gomez and Open Access member's inability to fully use Defendant's Website and the electronic documents therein has hindered, impeded and inhibited their access to Defendant's tours.

39.     Plaintiff Gomez and Open Access members have suffered as a result and has suffered particularized harm and an injury in fact.

40.     Plaintiff Gomez and Open Access member cannot make proper arrangements for transportation to Big Bus Tours Miami tour location(s) without the ability to know in advance the areas of the tours provided, the times and dates tours are offered, the length of the tours, and prices for the tours, which information and service is available online through Defendant's Website. Plaintiff Gomez and Open Access member face a great degree of uncertainty at not being able to view Defendant's tour information in advance (which information is available online through Defendant's Website). Because Plaintiff Gomez and Open Access members lack basic understanding of the "*who, what, where, and how*" to physically travel to Defendant's tour stop locations, they are effectively denied the ability to patronize Big Bus Tours Miami.

41.     Plaintiff Gomez has a concrete plan to become a customer of Big Bus Tours Miami tours in the near future and will continue to suffer further discrimination because Defendant refuses to comply with the ADA (see *Houston v. Morad Supermarkets, Inc.* 733 F.3d 1323 (11th Cir. 2013).

42.     By denying Plaintiff Gomez and Open Access members the opportunity to comprehend its Website and electronic documents therein due to a disability, Defendant has denied Plaintiff Gomez and Open Access members the opportunity to participate and benefit from Defendant's goods and services as afforded to the public.

43.     Plaintiff Gomez and Open Access members will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

44.     On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

45.     On information and belief, Defendant has not provided transparency to the public by disclosing its intent to correct the inaccessibility of its Website and the electronic documents therein.

46.     On information and belief, Defendant has not offered any form of electronic documents in an accessible format for blind or visually impaired individuals.

47.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations which Big Bus Tours Miami tours provide to the public.

48.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

49.     On information and belief, Defendant is aware of the common access barriers and barriers to effective communication within its Website and the electronic documents therein which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

50.     Defendant and alike tour services are fully aware of need to provide full access to all visitors to its Website.[5]

51.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

52.     Plaintiff Gomez and Open Access members have no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiffs' inability to investigate and compare sightseeing tour options.

53.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiffs is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

54.     Plaintiff Gomez and Open Access members have retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Conway Tours, Inc.

**COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

55.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations are required to ensure that communication is effective.

56.     Historically, Congress' statutory intent has been to construe Civil Rights

---

[5] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g.
(https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/),
 (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )

legislation broadly. The interpretation of causation is based on proximate (not remote) cause. In *Bank of America v City of Miami* 137 S. Ct. 1296 (2017)[6], the Supreme Court affirmed that proximate cause is controlled by the nature of the statutory cause of action (quoting from *Lexmark Intl' Inc. v. Static Control Components, Inc.* 572 U.S. (2014)). The interconnection of the right to participate in economic and social life is fluid and multi-dimensional such that a violation of civil rights causes ripples of harm to flow. *Bank of* America (quoting from *Ass. Gen. Contractors of Cal. Inc. v. Carpenter,* 459 U.S. 519, 534 (1983)). In Civil Rights violations, proximate cause requires a direct relation between the injury asserted and the injurious conduct. Thus, as a disabled individual, the instant Plaintiff has established standing.

57.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

58.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

---

[6] In *Bank of America*, the Supreme Court held that Congress has not legislated (drawn) precise boundaries on the application of proximate cause for civil rights violations and instructed the lower court to define the contours of proximate cause based on the facts and circumstances of the underlying action.

59.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

60.     Defendant's Website (together with the PDF documents contained therein) has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

61.     By virtue of the fact that Defendant's tours are available to the public, they are each a place of public accommodation pursuant to 42 U.S.C. §12181(7)(I) they are subject to the requirements of Title III of the ADA, and the ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

62.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the products and services offered by Defendant and the ability to investigate and choose a tour to patronize, the visually impaired have no access to Defendants tours, which Defendant offers to the public.

**The Website As A Place of Public Accommodation**

63.     The www.bigbustours.com website is a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(I) as an integral part of Defendant's educational and entertaining tours by providing the public information on the various tour stop locations

as well as times, dates, and prices of those tours and offers the public the ability to be educated as to the goods and services Defendant offers to the public.

64.     As delineated above, Defendant is a *Public Accommodation* under the ADA because it because it owns and/or operates the www.bigbustours.com website which is defined within §§ 12181(7)(I), (B), (E).

65.     It is clear that the ADA applies to the Defendant's Website, as the Website is a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

66.     Recent case law supports that the intangible barriers presented within Defendant's Website and electronic documents therein are violative of the ADA. See *Dennis Haynes v Dunkin' Donuts, LLC.* Cir. Case No. 18-10373 11th Cir. (Order Reversed and Remanded So Dist. Fla. Case 0:17-cv-61072-WPD Order) wherein the 11th Circuit Court of Appeals stated that the Dunkin' Donuts website was a service provided by the Dunkin' Donuts stores, which are places of public accommodation, and that the "ADA is clear that whatever goods and services Dunkin' Donuts offers as a part of its place of public accommodation, it cannot discriminate against people on the basis of a disability, even if those goods and services are intangible." see *id*. at 1281–82, pgs. 5, 6.

67.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services. Plaintiffs' injuries are real, have occurred, and are continuing. Plaintiffs' injuries will continue to

occur until it is absolutely clear that Defendant's policies are brought in line with 2019 expectations of civil rights.

68.    No notice is required because under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

69.    Unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. §12182(b)(2)(A)(II).

70.    Unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. §12182(b)(2)(A)(III).

71.    The use of the internet is at the center of daily life because it is 2019, not 1996.

72.     As a result of the inaccessibility of Defendant's Website and failure of the electronic documents contained therein to be accessible to visually impaired individuals, those visually impaired individuals are denied full and equal access to Big Bus Tours physical locations as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

73.     The Website does not offer include the universal symbol for the disabled[7] and the indication of website accessibility[8] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

74.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic components to make its Website and electronic documents contained therein accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

**PDF Documents**

75.     Defendant's website contains one or more links to a PDF (electronic document) attachment.   An example of one such link is the Miami Tour Map and Tour Bus Stop Timetable[9]. The PDF attachment's flat surface does not contain accessible

---

[7]  ™, or HTML "Accessibility" link for those individuals who are visually impaired

[8] W3C® WAI-AA WCAG 2.0

[9] https://d12dkjq56sjcos.cloudfront.net/pub/media/wysiwyg/bbtpdf/Miami_Map_April_2019.pdf

coding. Defendant's electronic documents have not been provided in HTML or with a text equivalent.

76.    The failure of Defendant's electronic documents to be accessible impedes Plaintiffs from fully accessing the financial services, goods and accommodations provided by Defendant and in so doing, Defendant has further discriminated against Plaintiffs.

**Violations of the ADA**

77.    Defendant is in violation of the ADA by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access websites and electronic documents. These violations are ongoing.

78.    As a result of the inadequate development and administration of Defendant's Website and electronic documents therein, Plaintiffs are entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

79.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs injunctive relief; including an order to:

a)  Require Defendant adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.bigbustours.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)  Require Defendant take the necessary steps to make the Website  readily accessible to and usable by visually impaired users, and during that time period

prior to the www.bigbustours.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing tours options, reserving and purchasing a tour, food selection while on a tour, and merchandise for purchase online, and of viewing electronic documents provided to the public within Defendant's Website. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate,  requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from obtaining the goods and services made available to the public through Defendant's Website and through Defendant's tours.

80.     For all of the foregoing, Plaintiff Gomez and Open Access members have no adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Andres Gomez and Plaintiff Open Access For All, Inc. hereby demand judgment against Defendant Conway Tours, Inc. and requests the following injunctive and declaratory relief permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff Gomez and Open Access

members (and other individuals with visual impairments) equal access to, and benefit from Defendant's services, programs, activities and facilities, as well as:

a) The Court issue a declaratory judgment that Defendant has violated Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant to update its www.bigbustours.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant to update all electronic documents made available to the public to remove barriers in order that individuals with visual disabilities can access the electronic documents to the full extent required by Title III of the ADA;

d) pursuant to 42 U.S.C. § 12188(a)(2), enter an Order for permanent injunction which directs Defendant to take all steps necessary to bring the electronic documents which it provides on its electronic media into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that all electronic documents are fully accessible to, and independently usable by, blind and low sighted individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

e) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[10] and indication of website accessibility[11] (standard WCAG 2.0) within its Website.  Such a clear display is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.bigbustours.com website;

f) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

g) The Court enter an order requiring Defendant to retain an accessibility coordinator and a third party consultant to review and guide Defendant through its accessibility creation and procedures to insure compliance thereto;

h) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

i) The Court enter an Order requiring Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant")

---

[10] 

[11]

who shall assist it in improving the accessibility of its electronic documents so they are accessible to individuals with visual disabilities;

j) The Court require Defendant engage a (mutually agreed upon) Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's electronic documents continue to be accessible to individuals with visual disabilities;

k) The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

l) The Court award damages in an amount to be determined at trial;

m) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

n) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this _____ day of June, 2019.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*